# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REGINA HANKINS, | ) 1:10-cv-1939 BAM |
| Plaintiff, | ) **ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |
| v. | ) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) |
| Defendant. | ) |

## **BACKGROUND**

Plaintiff Regina Hankins ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe. Following a review of the complete record and applicable law, this Court affirms the agency's determination to deny benefits to Plaintiff.

## **FACTS AND PRIOR PROCEEDINGS**

On June 29, 2007, Plaintiff filed her first application for disability insurance benefits (DIB) under Title II, of the Social Security Act (the Act), alleging disability beginning August 15, 2006.

AR 101.[1]  Plaintiff's application was denied initially and on reconsideration. AR 70, 75. Subsequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 43. ALJ Benjamin Parks held a hearing on January 26, 2010, and issued an order denying benefits on April 2, 2010.  AR 13-21.  This appeal followed.

**Relevant Medical Record**

Plaintiff alleges that bipolar disorder, including depression and anxiety, prevented her from working beginning on August 15, 2006.  AR 120, 160, 169.  The entire medical record was reviewed by the Court.  AR 178-322.  The medical evidence will be referenced below as necessary to this Court's decision.

**Hearing Testimony**

ALJ Parks held a hearing on January 26, 2010, in San Francisco, California.  Plaintiff appeared and testified. She was represented by attorney Alex Budoff. AR 43. A vocational expert ("VE") also testified.  AR 43.   At the conclusion of the hearing, the ALJ held open the administrative record for an additional forty-five days in order for Plaintiff to submit additional evidence after the hearing.  AR 45.

Plaintiff was forty-eight years old at the time of the hearing.  AR 46.  Plaintiff completed her high school education and attended vocational school where she received an associates of science degree.  AR 46.  With regard to her previous employment, Plaintiff stated that her most recent employment was approximately four years ago, where she worked at a hospice facility inputting medical records. AR 47.  Prior to working in medical records, Plaintiff was a title assistant. Plaintiff testified she was  let go from her title assistant position for an unknown reason after returning from a vacation.  AR 50.

At the hearing, Plaintiff testified she suffers primarily from mental health challenges.  AR 47. Plaintiff experiences bipolar disorder, manic depression, and panic attacks. AR 48, 53. She stated that she first noted her symptoms five years prior to the hearing (i.e. in 2005). AR 48.

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1   According to Plaintiff, the elevated moods of her bipolar disorder lasted a couple days, during which
2   she was irrational, spent money freely, and did a week's worth of housework in hours. AR 48.
3   However, Plaintiff testified that even when her mood was elevated she did not leave the house unless
4   she absolutely had to. AR 56. Plaintiff testified that her manic episodes were becoming less and less
5   frequent. AR 56-57. However, Plaintiff stated that her depressive periods could last for weeks,
6   during which she felt sluggish, stayed in the house, did not get dressed, and did not eat. AR 48.
7   According to her testimony, Plaintiff did not get out of bed two or three times a week. While in her
8   room, Plaintiff watched TV and slept. AR 55. Plaintiff also testified to panic attacks, but stated that
9   Xanax worked well. AR 53-54. According to Plaintiff, she was taking Lexapro, Xanax, Klonopin,
10  and an anti-seizure medication that she could not remember. AR 49. Plaintiff testified that the
11  anti-seizure medication, which she had recently started, was working well. AR 49. Plaintiff also
12  testified that she did not use alcohol, as it had the potential to interfere with her medications. AR
13  50, 52. She also stated that she was seeing her doctor regularly, had "some" counseling, and at her
14  last visit, her doctor suggested that she attend group counseling. AR 50.

15  When asked about her typical day, Plaintiff stated that during the day, if she has a little bit
16  of energy, she does light household chores. AR 52. She stated that she rarely left her house, leaving
17  only when she absolutely has to. AR 52-53. She cooked only sporadically and usually ordered
18  takeout. AR 53. According to Plaintiff, she had problems remembering things and needed to make
19  lists of simple tasks, like making a phone call or taking out the trash. AR 57. In Plaintiff's opinion,
20  her condition is worsening. Her periods of feeling good are decreasing, and her mind is less clear.
21  AR 57.

22  During the hearing, the ALJ also inquired how Plaintiff got along with the general public,
23  including supervisors and co-workers. Plaintiff testified that she got along very well with her co-
24  workers and that her prior positions did not involve the general public, she however, did not get
25  along with her previous supervisor. AR 58.

26  Thereafter, the ALJ elicited the testimony of a vocational expert, Baer. AR 61. The VE
27  stated that Plaintiff's past work was classified as a medical records clerk, and a general clerk, both
28

light, semi-skilled. AR 61. The VE was asked to consider two hypothetical questions posed by the ALJ. AR 61. First, VE Baer was asked to consider jobs a hypothetical person could complete assuming a hypothetical worker of Plaintiff's age, education, and work experience with no exertional limits; but such a person had mild activities of daily living, was moderately impaired in social functioning, had some difficulty with supervisors but was not limited on that basis in terms of functioning, had moderate concentration, persistence and pace, would have difficulty with detail and complex instructions 40 to 50 percent of the day, could do simple, repetitive one and two-step tasks to maintain a normal production schedule. The person would also require limited public contact but would not experience episodes of decompensation in a work environment. AR 61. VE Baer indicated such an individual could perform work as a housekeeper, cleaner, packing line worker, and sorter of agricultural produce. AR 62. VE Baer also indicated such an individual could not perform Plaintiff's past relevant work. AR 62.

In a second hypothetical, VE Baer was asked to consider the same non-exertional limits but the individual would also have a 40 to 50 percent limitation in maintaining simple, repetitive tasks in a normal production schedule. VE Baer indicated such an individual could not perform any work as it exists in the national economy. AR 63.

Plaintiff's counsel asked the VE to consider the second hypothetical, but the hypothetical individual would be "off task" for 10 to 20 percent of the time. The VE testified that individual could not perform any work as it exists in the national economy. AR 63. The VE also testified that if Plaintiff was "off task" 10 percent of the time for simple tasks, she would be unable to perform any jobs. AR 63-64.

**ALJ's Findings**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 13-21. More particularly, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 15, 2006. AR 15. Further, the ALJ identified bipolar disorder as a severe impairment. AR 15. Nonetheless, the ALJ

determined that the severity of the Plaintiff's impairment did not meet or exceed any of the listed impairments. AR 15.

Based on his review of the entire record, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform the full range of work involving simple repetitive tasks with limited public contact at all exertional levels. AR 16.

Next, the ALJ found that Plaintiff was unable to perform any past relevant work, but was able to perform other work that existed in significant numbers in the national economy including as a housekeeping cleaner, packing line worker, and sorter. AR 19-21.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C.

§ 1382c (a)(3)(A). A claimant must show that she has a physical or mental impairment of such severity that she is not only unable to do her previous work, but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

Here, Plaintiff argues that the ALJ erred in: (1) improperly discounting her subjective complaints; (2) discounting her testimony, which she contends is bolstered by the opinion of Nurse Practitioner Reed; and (3) improperly ignoring the lay witness testimony of her sister, Mindy Hodges.

## DISCUSSION

### 1.   Credibility

The nexus of Plaintiff's complaint surrounds's the ALJ's credibility assessment. According to Plaintiff, the ALJ found Plaintiff suffered from bipolar disorder, but failed to provide clear and convincing reasons for rejecting her subjective mental limitations that she alleges are supported by treatment notes. (Doc. 12 at 4). Defendant responds that the ALJ's credibility finding is supported by substantial evidence. (Doc. 15 at 7).

An ALJ must make specific findings and state clear and convincing reasons to reject a claimant's symptom testimony unless affirmative evidence of malingering is suggested in the record. *Smolen v. Chater*, 80 F.3d 1273, 1283-84 (9th Cir. 1993); *see also Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009).

The ALJ discounted Plaintiff's credibility based on: (1) Plaintiff's wide gaps in treatment; (2) Plaintiff's activities of daily living; and (3) Plaintiff's inconsistent statements. AR 16-18.

A two step analysis applies at the administrative level when considering a claimant's subjective symptom testimony. *Smolen v. Chater*, 80 F.3d at 1281. First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Id.* at 1281-1282. If the claimant satisfies the first step and

there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his symptoms only if he makes specific findings that include clear and convincing reasons for doing so. *Id*. at 1281. The ALJ must "state which testimony is not credible and what evidence suggests the complaints are not credible." *Mersman v. Halter*, 161 F.Supp.2d 1078, 1086 (N.D. Cal. 2001) ("The lack of specific, clear, and convincing reasons why Plaintiff's testimony is not credible renders it impossible for [the] Court to determine whether the ALJ's conclusion is supported by substantial evidence"); Social Security Ruling ("SSR") 96-7p (ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight").

An ALJ can consider many factors when assessing the claimant's credibility. *See Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). The ALJ can consider the claimant's reputation for truthfulness, prior inconsistent statements concerning his symptoms, other testimony by the claimant that appears less than candid, unexplained or inadequately explained failure to seek treatment, failure to follow a prescribed course of treatment, claimant's daily activities, claimant's work record, or the observations of treating and examining physicians. *Smolen v. Chater*, 80 F.3d at 1284; *Orn v. Astrue*, 495 F.3d at 638.

The first step in assessing Plaintiff's subjective complaints is to determine whether Plaintiff's condition could reasonably be expected to produce the pain or other symptoms alleged. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). Here, the ALJ identified Plaintiff's bipolar disorder as a severe impairment. AR 15. He further found that:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairment could reasonably be expected to cause the alleged symptoms; however the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

AR 17.

This finding satisfied step one of the credibility analysis. *Smolen v. Chater*, 80 F.3d at 1281-1282.

Second, in order to disbelieve a claim of disabling symptoms, an ALJ must make specific findings justifying that decision. *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). The findings

must convincingly justify the ALJ's rejection of the plaintiff's subjective symptom testimony. *Id*. at 602. However, an ALJ cannot be required to believe every allegation of disabling pain.

In rejecting Plaintiff's credibility, the ALJ provided several valid reasons. AR 17-19. First, the ALJ pointed to a four-month treatment gap in 2007 and the lack of evidence of mental health treatment in the record since March 2008, as indicating that Plaintiff's symptoms were not as a severe as she alleged. AR 18. Specifically, ALJ Parks stated:

> Following a gap in treatment of four months, the claimant said she was depressed, but a mental status exam reveals that her hygiene and grooming were good and eye contact appropriate. During a January 2008 physical exam, the claimant's mood and affect were normal and a March 2008 mental status exam documents normal behavior, motor activity, speech and affect, euthymic mood, unimpaired insight and judgment, and normal memory and concentration.
>
> Despite her allegations of severe, persistent symptoms and her testimony that she continues to seek mental health therapy, there is no evidence of any mental health treatment since March 2008, indicating that her symptoms are not as severe as alleged.

AR 18.

An ALJ may discredit a Plaintiff's testimony for lack of consistent treatment. *See Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (ALJ discredited Plaintiff's testimony of depression and fatigue because Plaintiff did not seek treatment or evaluation). Plaintiff contends that after the four-month treatment gap in August 2007, her symptoms remained severe. (Doc. 12 at 8). According to Plaintiff, the ALJ erred by interpreting her four-month lack of treatment as evidence that her symptoms were not as severe as alleged. Plaintiff argues that a treatment note in 2007, immediately after her treatment hiatus, indicates that she still had symptoms consistent with her previous treatment notes, including hypomania, irritable mood, racing thoughts, and poor sleep. (Doc. 12 at 8). However, in the same August 2007 treatment note, Nurse Practitioner Reed's mental status examination revealed a normal mood, affect, and thought process, contradicting Plaintiff's subjective report that she was "not doing very well," and not tolerating her medications. AR 212. In addition, following March 2008, other physicians who examined Plaintiff noted normal psychiatric findings, leading to the inference that Plaintiff may have stopped mental health treatment due to improvement in her symptoms. AR 257-58, 263-64, 268, 273, 290, 301-02. The ALJ properly discounted Plaintiff's subjective

8

complaints based upon wide gaps in treatment. *See* AR at 18; *see also Fair*, 885 F.2d at 603 (a factor an ALJ may consider in weighing a claimant's credibility is the claimant's "unexplained, or inadequately explained, failure to seek treatment"). The bulk of the treatment records are from 2006 to 2008 and the ALJ's hearing was held in 2010. *See generally* AR at 178-322. The ALJ therefore concluded that Plaintiff's sparse treatment after 2008 is inconsistent with someone with a disabling mental impairments. This is a clear and convincing reason for rejecting Plaintiff's credibility.

Second, Plaintiff argues that the ALJ misinterpreted the record when he found that she was not credible because in February 2007, "she could manage food and entertainment preparation for a family activity." AR 18. According to Plaintiff, the ALJ failed to note that her ability to prepare a meal for her family triggered a two-day episode of hypomania. (Doc. 12 at 6). However, the ALJ did not reject this evidence. The ALJ specifically noted that preparing the family meal "caused [Plaintiff] anxiety." AR 18. The ALJ went on to find that Plaintiff's daily activities were inconsistent with her allegations of disabling symptoms. 20 C.F.R. § 404.1529(c)(3)(i); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (allegation of disability undermined by testimony about daily activities). However, the ALJ properly noted Plaintiff was able to take her father to breakfast, shop for clothing, food, and household items, perform all household chores, and prepare meals according to questionnaires completed by Plaintiff and her sister. AR 19, 142-44, 149-50. In addition, Plaintiff reported to consultative examiner James McNairn, M.D in 2007 that she was able to go shopping and do errands independently, and enjoyed television, music, radio, games, and gambling at local casinos or in Las Vegas. AR 184. Plaintiff also reported to Dr. McNairn that she has visits and visits others. AR 184. An ALJ may consider testimony regarding a claimant's daily activities when making a credibility determination. *Fair,* 885 F.2d at 603. Further, where evidence regarding a claimant's disability is susceptible to more than one rational interpretation, the conclusion of the ALJ must be upheld. *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995). The record indicates that in her activities of daily living, Plaintiff faces only mild restrictions. The ALJ here properly found that Plaintiff's wide range of activities weighed against fully crediting her allegations. *See, e.g., Burch v. Barnhart*, 400 F.3d 676, 680-681 (9th Cir. 2005) (claimant's

activities of caring for her own personal needs, cooking, cleaning, shopping, and interacting with family "suggest that she is quite functional").

Next, the ALJ properly rejected Plaintiff's credibility based upon ordinary techniques of trustworthiness determination, such as Plaintiff's inconsistent statements. AR 18. The ALJ relied upon an inconsistency between Plaintiff's testimony and other evidence in the record to conclude that Plaintiff's testimony was not entirely credible. AR 18. An ALJ may rely on such ordinary techniques for credibility evaluation. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *see also* SSR 96-7p, 1996 WL 374186 ("One strong indication of the credibility of an individual's statements is their consistency"). In particular, Plaintiff testified that she did not leave the house unless she absolutely had to. AR 56. However, Nurse Reed noted that Plaintiff "report[ed] feeling well enough" two days per week to do some activities outside the home, and went to the gym two days a week. AR 223. On a written questionnaire, Plaintiff also conceded that she went outside two to three times a week. AR 143. Plaintiff's sister, Mindy Hodges also stated that Plaintiff went out a few times a week. AR 151.

Further, the ALJ was also entitled to discount Plaintiff's subjective complaints because Plaintiff's allegations conflicted with the medical record. Dr. McNairn, consultative examiner, opined that Plaintiff's ability to maintain attention and concentration was only mildly impaired. Kelly Loomis, M.D., State Agency psychiatrist, also opined that Plaintiff was able to maintain concentration, persistence and pace throughout a normal workday and workweek as related to simple tasks. AR 187. *See Light v. Soc. Sec. Admin.*, 119 F.3d at 792 (ALJ may consider testimony from physicians concerning the effect of symptoms of which Plaintiff complains). Although lack of objective evidence supporting the claimant's symptoms cannot be the sole basis for discounting symptom testimony, the ALJ may consider it as one factor in the credibility analysis. 20 C.F.R. § 404.1529(c)(1)-(2); *Burch*, 400 F.3d at 681. Here, despite Plaintiff's testimony suggesting she was either manic or depressed, her mental status examinations repeatedly demonstrated intact concentration, as well as normal mood. AR 54-55, 178-80, 185-86, 206, 208, 210, 212, 263-64, 268, 273, 290, 301-02.

Given these inconsistencies between Plaintiff's testimony and the record, the ALJ was entitled to draw the inference that Plaintiff's testimony was not entirely reliable as a general matter. *See Tommassetti*, 533 F.3d at 1039.

### 2. Nurse Practitioner Michael Reed's Observations

In a related credibility argument, Plaintiff argues that her subjective complaints are supported by the treatment notes of Nurse Practitioner Michael Reed. More specifically, Plaintiff argues that the ALJ erred in rejecting the opinion of Nurse Reed. (Doc. 12 at 10). The Court disagrees. The ALJ properly discussed Nurse Reed's observations in the context of Plaintiff's credibility.

According to Plaintiff, Nurse Reed was the primary treating mental health professional at Kaiser Permanente Bakersfield, treating Plaintiff on-and-off since 2004. AR 214; (Doc. 12 at 10). In an undated mental assessment, Nurse Reed opined that Plaintiff has a "fair" ability to perform work-related activities. AR 180.

After reviewing Nurse Reed's opinions, the ALJ gave Nurse Reed's assessment little weight for several reasons. AR 19. First, the ALJ was correct in noting that Nurse Reed was not an acceptable medical source. AR 18. SSR 06-03p (specifying that a nurse practitioner is not an acceptable source). The regulations differentiate between opinions from "acceptable medical sources" and "other sources." *See* 20 C.F.R. §§ 404.1513(a), (d); 416.913(a), (d); *see also* SSR 06-03p, at *2, 2006 SSR LEXIS 5, at *4 ("only 'acceptable medical sources' can be considered treating sources, as defined in 20 CFR 404.1502 and 416.902, whose medical opinions may be entitled to controlling weight."). Nurse practitioners are specifically classified as "other sources," and their opinions may be accorded less weight than opinions from acceptable medical sources. *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996). In this case, as the ALJ noted, there was no indication that Nurse Reed worked closely under the supervision of a psychologist or psychiatrist. Although Ruby Bayan, M.D.'s name is on the assessment, her signature is absent from the assessment and there is no evidence that she treated or examined Plaintiff. AR 18.

Second, the ALJ correctly noted that Nurse Reed's opinion on the questionnaire was inconsistent with the objective findings listed on that same questionnaire. The ALJ noted that while Nurse Reed's assessment concludes that Plaintiff's bipolar disorder results in fair functional ability

11

and that her work function has been substantially impaired, his report also reflects Plaintiff's intact concentration, normal memory, average intelligence, and appropriate affect. AR 18-19, 178-79. *See* 20 C.F.R. § 404.1527(d)(3) (ALJ should consider the degree to which a medical source presents relevant evidence to support an opinion, including medical signs and laboratory findings); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (ALJ can reject physician's assessment of limitations when the physician's clinical notes and observations contradict the assessment).

Third, the ALJ explained that Nurse Reed's opinion lacked specificity. AR 18. In his medical source statement, Nurse Reed found "fair" limitations regarding Plaintiff's abilities to perform all work-related functions, with "fair" defined as instances where the "evidence supports the conclusion that the individual's capacity to perform the activity is impaired, but the degree/extent of the impairment needs to be further described." AR 180. 20 C.F.R. § 404.1527(d)(3) (ALJ should evaluate the explanation a source gives to support an opinion). Nurse Reed then failed to provide an explanation of the evidence supporting the degree of Plaintiff's impairments. *See Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (ALJ may discredit treating physician's opinions that are conclusory, brief, and unsupported by the record as a whole).

Finally, Nurse Reed's severe assessment contrasted notably with the assessments of consulting examiner Dr. McNairn and the State Agency psychiatrist Dr. Loomis, who found only mild to moderate limitations. AR 19. The ALJ was entitled to resolve any ambiguities in the record, and substantial evidence supports his interpretation. In light of the above, the Court concludes that the ALJ properly gave Nurse Reed's opinion minimal weight.

**3.    Lay Witness Testimony**

Finally, Plaintiff contends that the ALJ "failed to even mention the third party evidence" provided by her sister, Mindy Hodges, namely, a written questionnaire. (Doc. 12 at 14). Plaintiff's argument is without merit. Although the ALJ did not mention Ms. Hodges by name, the ALJ expressly cited to and summarized the statements in Ms. Hodges' questionnaire. AR 18, 148- 55. As the ALJ noted, Ms. Hodges reported that the Plaintiff fed and watered pets, prepared complete meals, did housework chores such as cleaning, laundry and ironing, drove a car, and shopped for household items, food, and clothes—all statements contained in Ms. Hodges' report. AR 18, 149-51.

1 Thus, the ALJ summarized the third-party statements in detail, clearly indicating that he considered the information. AR 18. Because the ALJ actually credited these statements, there was no need for him to articulate reasons for rejecting them. *Cf. Bayliss*, 427 F.3d at 1218.

Further, while Plaintiff argues in her reply that it was error for the ALJ to ignore Ms. Hodges' statements that Plaintiff cleans the house manically, spends money compulsively, and only leaves the house a few times a week, such error, if any, was harmless. (Doc. 16 at 6). Plaintiff cannot and does not argue that Ms. Hodges' statements were inconsistent with the ALJ's RFC which allowed for the performance of simple repetitive tasks with limited public contact. (Doc. 16 at 6). In particular, Ms. Hodges noted that Plaintiff was "sometimes" not able to get out of bed, was agitated "at times," "sometimes" sleeps all day, "sometimes" needed help remembering to do certain chores, had "trouble concentrating," could follow written instructions but needed spoken instructions repeated and written down, could pay attention "approx" fifteen minutes, and did not handle stress well. AR 148-50, 153-54. Plaintiff's sister's statements essentially echoed Plaintiff's own testimony and, as discussed above, the ALJ already provided specific, clear, and convincing reasons for discounting Plaintiff's testimony, which are equally germane to the third-party testimony. As such, any error in not explicitly re-stating, or incorporating by reference, the reasons given for discounting Plaintiff's testimony with respect to this third party was harmless and remand is not warranted. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (harmless error when ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record).

/////
/////
/////
/////
/////
/////
/////
/////

**CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is **DIRECTED** to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff, Regina Hankins.

IT IS SO ORDERED.

**Dated:** **September 20, 2012**          /s/ **Barbara A. McAuliffe**
                                           UNITED STATES MAGISTRATE JUDGE